May it please the Court, the late Justice Powell, writing for the Supreme Court in Brown that the protections afforded by the Double Jeopardy Clause are not so fragile that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into multiple temporal or spatial units. That same basic principles reflected in this Court's body of law governing double jeopardy issues in the context of successive conspiracy prosecutions. This case involves successive conspiracy prosecutions against my client Edward Jones in the Eastern and Western Districts of Virginia. Both conspiracies allege violation of 21 U.S.C. 846, alleged that the object of the conspiracies was to distribute five kilograms or more of cocaine. There are, we think, three basic arguments for why it would be a double jeopardy violation to allow the government to proceed on count one of its Western District indictment against Mr. Jones. The first is that it's a double jeopardy violation under a straightforward application of the five-pronged totality of the circumstances test adopted by this Court in McDougall and Raggins. The second is that it's a double jeopardy violation under this Court's decision in Jarvis, where on very similar facts, the Court, under the demanding plain error standard review, held that in that case it was a flagrant violation of the Double Jeopardy Clause to allow the second conspiracy prosecution to move forward against the defendant. And then the third argument is that it's a double jeopardy violation under the internal logic of the government's arguments in this case. Both below and on appeal, the government has alleged that my client's, all of my client's alleged cocaine-related activities for a 14-year period are part of a single, continuous criminal conspiracy with multiple actors, not separate independent conspiracies. Sotomayor, you're not relying on this, the co-conspirator or the other. That's not that argument. Is that what you're saying to me? I'm not saying it very well. But you had sort of an addenda argument in your brief about they waived it or there have been — that's not your third argument here, is it? It is the third argument, but I want to be clear about what we're arguing. The point is not, I think, that there's some independent judicial doctrine that means that we win because they said that. But the point is that under the internal logic of the position the government has staked out, and it's a necessary component of their Western District conspiracy charge, there's no principled reason, once one recognizes the conspiracy for what it is, why a single transaction should be arbitrarily excised from the broader conspiracy and treated as a separate independent conspiracy. So this is my — this is my question to you. Is there — it's hard for me to weave all these cases together and make them — harmonize them, if you will. And so it's unclear to me how — Jarvis just doesn't seem to fit in with the other double jeopardy cases involving the small conspiracy and the larger conspiracy. And so can you tell me how it's distinguishable, not only in this circuit, but in other circuits? Well, I'm not sure that Jarvis — I don't believe that Jarvis is distinguishable from our facts. I think the facts are very similar. I think it's as close to being on all fours as you can find in this context. The question of how Jarvis fits into the other cases from this circuit where the court has held there are multiple conspiracies, I think depends on which particular case, because it's a very fact-intensive inquiry. Some of the cases — one of the cases the government relies on, for example, the unreported decision in Jones, I think we've made clear on a footnote, we don't think much of the analysis in that case. It's, you know, local rule 32.1 exists for a reason. But in the other cases, like in McDougall, in Hoyt, and in some of these others, if you work through, I think the answer is that there always seems to be at least one or two factors under the five-factor case in those other cases where there's just a clear distinction between the two conspiracies. In McDougall, I believe it's the temporal distinction, that one of the conspiracies ends in 86 and the other doesn't begin until 88. Okay. Maybe I can approach this a different way, because you've done, I thought, a really good job in your brief, and they've done a good job in their briefs in sort of going through those factors. And I didn't want to get bogged down on that in oral argument. But I think you'd have to concede, wouldn't you, that there are cases where the small conspiracy is different than the big conspiracy that surrounds it. Certainly. Yes. Yes. And does it make any difference? Because this is what the only thing I could come up with distinguishing Jarvis is that there was no trial in the little conspiracy. There's a plea here. Okay. Whereas in Jarvis there had been a trial. There had been a trial, and then there had also been a trial on the big conspiracy. So you had, you know, and it was plain error to be sure, but you knew what happened at each trial. I think in Jarvis it certainly maybe makes it a little bit easier for the court under the traditional double jeopardy test, right, the same evidence test. They can look at the evidence and say, hey. But Jarvis disavowed. But I think that's the only sense under Jarvis in which the existence of the trials makes a difference. Because the rest of it, they work through the five-factor test. The case I would direct this court to, because I do understand, I think, what Your Honor is struggling with, I would suggest looking in particular for a contrast between Jarvis and another case where the result comes out the other way to this court's decision in Hoyt. I think Hoyt is a great example of how you can have conspiracies that are operating in the same basic geographic area in the same time period relating to the same statute, and yet they can genuinely be separate underlying criminal agreements. And the key factor in Hoyt doesn't even plug in neatly to any of the five prongs. It's the notion that the objective of the two conspiracies in Hoyt was different. One of them was a horizontal agreement between dealers, basically, that they would not tread on each other's territory in connection with their distribution efforts. The other conspiracy in Hoyt was the vertical agreement that the defendant had with his suppliers and then distributors, akin to the agreement that my client has alleged to have had here, and it was sort of your garden variety cocaine distribution agreement. My point would be that the difference between Jarvis and Hoyt and why one comes out one way and why one comes out the other and why our case is on the Jarvis side of the world, in Jarvis and here, what you've got is just a single vertical agreement. And the reason we make this point about the government's characterization of the 14 years as being a single conspiracy is because once you accept that, which I think is an accurate argument, I don't think either side disagrees with that, the stuff that they are trying to carve out separately is no different from what was going on for the 14 years that preceded it. It's the same people involved with the exception of the informant. We know from Jarvis that inserting an informant doesn't make a difference. And all they're doing is getting a week to a week and a half's worth of cocaine supply to push out through the distribution network in Lynchburg. I do understand what you're saying about Hoyt. But in conspiracy cases, not double jeopardy cases, but just genuine conspiracy cases, you have the you remember about the prong and the center of it. And so you have people that are selling, you have people that are buying, and you have people distributing, and they're all part of one conspiracy. So the rationale for concluding that there was no double jeopardy claim in Hoyt doesn't seem to me to be terribly persuasive. So distinguishing it from Jarvis doesn't prove on that basis to be really If you thought that the court got it wrong in Hoyt, right, that would only, I think, lend further support, you know, to our position. If you think that if Hoyt was a double jeopardy violation or if you question the accuracy of the holding there, then certainly what we've got here is an even easier case to recognize as a double jeopardy violation. What I'm searching for is some principled way of dealing with these cases. And to be frank, I think it's difficult. The one other hook, I will say, though, in the law, because this is in the area where you have the court adopting as the framework for analysis, totality of the circumstances, five factors, and then emphasizing in Raggins, the seminal case where it sort of embraces this test. It says, but be careful, even this is flexible because we have to avoid, you know, problems of artful pleading, so it's going to be very much case by case. I think it is hard to then, in your position now, have to take all that and weave it into a unifying thread. We don't have a trial on either end, not with the little conspiracy or the big conspiracy. But I'm not, again, Jarvis, though, works through the five factors, and at the end of the day, certainly here, there was proceedings below, and the court held, and I don't think the government has contested on appeal, that we made enough of a prima facie showing to shift the burden to the government. The government having that burden has done nothing, as best I can tell, below or on appeal to demonstrate factually what the difference would be, other than to make the sort of question-begging argument, hey, look at our Eastern District indictment. It only talks about this one transaction and these few gentlemen. Look at the Western District. Right. I have a question factually about that that you may or may not know the answer to. So Mr. Jones was sentenced to 135 months. Do you know whether or not the relevant conduct, it is sentencing for the plea for the single transaction, do you know whether relevant conduct for this ongoing conspiracy was included in that to sentence him to 135 months? I do not believe the government below in the Eastern District argued for the inclusion of that other activity as relevant conduct. And that's why we discussed the Witt case in our reply brief, because I don't think that makes a difference. One thing I did want to note to the question you were saying, though, about it's sort of a unifying principle. The best one can do, I think, sometimes in these situations is to look at the cases carefully and sort of try to follow them and impose consistency. And the reason I make the point about Hoyt and the notion of the two different conspiracies having these different objectives, even though they're kind of bumping up against each other temporally and geographically, is in Raggans. I believe it's in Raggans when the court articulates the five factors, and then it says, you know, it's going to be flexible, there could be others. One of the – two of the other things that it mentions in Raggans, two other factors that it says might be relevant, are the objectives and the means of carrying out the conspiracy. And I think – I just continue to think that Hoyt, if you're looking for sort of a, you know, a case of kind of how it's done right, that was a pretty good example because it really is different. The nature of the agreement between the participants is different in a horizontal territory splitting agreement than in a vertical acquisition and distribution agreement. Here, as in Jarvis, we don't have any kind of distinction that one can draw in that manner. All my client is doing, if their allegations are true, is for a 14-year period, he is finding various sources of supply, acquiring cocaine, and pushing it out through a distribution network in Lynchburg. There's no reason why, if all 14 years of this are a single conspiracy, why the government should be able to arbitrarily excise a single transaction and call it a separate conspiracy just because they want essentially two bites at the conspiracy apple. And I think the – That's exactly correct. And I think that's another one of the underlying principles, if you're looking for sort of a unifying principle. It's not called complaints. The thing that drives this Court's analysis in McDougall and Raggins, where it first tackles these issues, is the sensitivity to the fact that in the context of conspiracy charges, they are easily manipulated, especially because the government can select and not select particular overt acts. And the Court goes on at length about that. And I think that one question the Court might ask itself alludes, Judge Motz, to what you just said, is flip this – flip the inquiry. We're saying, hey, you know, we're the ones here challenging the decision below. But think of it this way. Could the government logically have taken the Kerkley Hotel transaction with my client and Martinez Mata and Sanchez Roque, who had been supplying him for a year before that in the Western District, according to the supplemental – the sealed appendix here. Could they have taken that and just lumped that in with the other 14 years of activity? Of course they could. The way they did with every other transaction that they had in that conspiracy. Exactly. Of course they could. They very easily could have. And I would submit that once one recognizes that, I think that may be in some ways the key to sort of unlocking kind of how the case should end. Because I think Raggins and McDougall imply that when you have these situations and they're confronting the appellate court, it's kind of a binary choice. If it was discretionary, oh, they can charge five conspiracies here, or they can just charge one, well, then the government wouldn't be anything wrong with them manipulating it by doing different indictments and parceling out their overt acts across multiple indictments. But if you recognize that this logically could and should hang together as a single conspiracy, and it's just their charging decisions that have made it on paper, even giving them the basis for saying that it's two, well, their charging decisions cannot trump the double jeopardy guarantee. That's the entire point of this court's body of law in this area. But with that, unless there's further questions. I do have a question. I think it's somewhat related to how very fact-intensive these cases are. It's like the reasonable suspicion cases, right? It's all very fact-intensive. How are we supposed to review the district court conclusion in this case, right? The district court said, I see two conspiracies. Is that a fact-finding subject to clearly erroneous review, or is it more like reasonable suspicion where we say, the Supreme Court said it's a mixed question of law and fact? I would say in this context, it is certainly not a fact-finding. It is at best a mixed. The reason for that is there was no evidence, there was no witnesses put on in front of the district court from either side. There was no other evidence put on that would call for the fact-finding analysis that a district court makes that's the underlying trigger for the clearly erroneous standard. And there could have been. Riggins makes clear one can call witnesses on either side and sort of have a sort of preview for the court of what the evidence is going to look like. But we don't have to in order to meet our initial threshold burden. And we didn't. And the government didn't. And so at this point, the section that's labeled factual background in the district court opinion is almost literally a cut and paste from the government's brief. So I would submit that in that context, it is certainly not the clearly erroneous standard. And frankly, even if it was, I think we still win because the facts the court's looking at are just the documents. And this court is as capable as the district court of reading the documents and drawing conclusions from them. Thank you. Good morning, Your Honors. May it please the Court, Erin Culpa for the United States. I think first I want to address, Judge Harris, your question about the standard for this court's review. I do have to agree with counsel that I think it is a mixed question of law and fact. This analysis that the judge has to go through in applying the factor test, and much like in the reasonable suspicion context, it can be factually driven, but it's how you apply those facts to the legal test that I think makes it that mixed question of law and fact. Reasonable review. Yes, it would be the same sort of review that this court would engage in in similar pretrial issues. And I did want to point out, I know that opposing counsel has made much of the fact that the government didn't offer any evidence or witnesses, but this court's jurisprudence had made it clear that the government can rely on a factual proffer, which is very similar to what we did here. And the judge is advised to do so, but you can. We can, Your Honor. And I think that there were decisions made here, given the context of the trial and the timing, that the government chose to rely on a factual proffer here because of the timing of the jury trial that was impending. And Judge Moon properly relied on our factual proffer about what we expect and anticipate that the evidence at trial is going to be. And I think here that it is important to note how Jarvis is distinguishable from a lot of this court's other cases ruling on this question of double jeopardy in the conspiracy context. And I think that what's important is the court found it very persuasive that in both trials in Jarvis that the same witnesses and the same evidence was presented, that the case presented against the defendant was nearly identical as it went to trial. And I think that that is significant. And I think that that's. Wouldn't that be significant for double jeopardy purposes? Because that is your choice. In other words, to preserve his argument, he has to do it pretrial with respect to the second one. So there's really no way he has to bet the store in not doing that to get trial testimony with respect to the second trial, right? And that I completely agree with your honor. But I do think that, you know, you're relying. I think what the court relies on is the factual record that it has before it and making the decision in Jarvis. The factual record in both was the same evidence. And I think what's here in the factual record is not just the face of the indictments as the defendant would have you believe. It's actually much more than that. So in the DVA conspiracy, there is not just the face of the indictment, but there was a statement of facts that was filed. And in that statement of facts, it describes the context of that conspiracy. The sentencing memorandum filed by the government in the eastern district of Virginia conspiracy, which talked about the fire. The eastern district of Virginia entered into a plea agreement with Mr. Jones. Was the government also investigating him for the full scope of the conspiracy in the western district of Virginia? Yes, it was. And that is something that was acknowledged at the sentencing. The government can't. I mean, I think that's really quite damning. The government can't fashion their plea agreement or their statement of charges to avoid double jeopardy problems. And I'm not suggesting that that was what. That seems to be a problem in the negotiation stage, in the fair negotiation of him pleading guilty to that. Was he? Well, I won't get into that. But in page one of your brief, you assert that there were two separate conspiracies here varying significantly in nature and scope. What is your strongest argument that that is the case? Because I don't see them varying in nature or scope or anything. I think that you have to look at the factors that Judd Moon pointed to, the breadth of timeframes, so the breadth of conspiracy. There is a vast difference between a six-week period of time and a 14-year distribution scheme within the Lynchburg, Virginia. The government was ongoing when he pled to the single. You could have included the single August 22nd, 2012 transaction in the Western District of Virginia indictment. Couldn't you? I don't know that that's true, Your Honor. And I will tell you that this is, and it's the government's position that these are separate conspiracies because this was such a new venture. Even accepting that, I have seen in 20 years of doing this, I have seen many times where the government's pled to conspiracies or more. Right? So it could have been, right? Is that not the case? And let me just make sure that I'm. You've never seen a case like that? I just want to make sure I'm understanding your question properly, that the two separate conspiracies could have been pled, charged. There are cases where the government pleads, charges somebody with two different conspiracies in the same indictment. Yes, Your Honor. I do agree that two separate conspiracy counts could have been included in one indictment. There was $500,000 involved in the transaction on August 22nd, 2012. Is the government taking the position that that $500,000 was not somehow from or gained by Mr. Jones from the Western District of Virginia conspiracy that the government says had been going on with these same actors from 1998 until 2014? At the time of the government's investigation and to this point, we do not have information about where that money came from or where, frankly, Mr. Jones, how the money was passing through. In trial, where would you argue the $500,000 came from? I think that in going to trial . . . Was he gainfully employed? Let me just stop you there. Yeah, was he gainfully employed? He was, Your Honor. Was he making $500,000 a year? Not based on our evidence that he was making $500,000 a year, no, Your Honor. It seems like it must have come from the money for the singular transaction in Eastern District of Virginia. It seems like it must have come from the overall conspiracy. I do acknowledge that that is a possibility. I will tell you that the government's investigation didn't give us insight into how the money was passing through Mr. Jones' hands or where, in fact, it was going after that, where the cash was coming from, and we don't have that insight. I think that is the government's position about this, about the conspiracy and how it was charged at the time of this transaction in 2012. But even without that insight, I've certainly seen the government argue in drug cases at closing argument, this man was employed as whatever he was employed as, certainly not making $500,000. So where did he get it? Use your common sense as the jury instructions tell you. That's exactly what you would be saying if you were trying this case. I think that in order to bring in the evidence from that transaction, we would need to potentially litigate a 404B motion in front of the court. I mean, you wouldn't have to if you had charged the conspiracy as the conspiracy should have been charged because it was all one ongoing conspiracy, as the government itself has said. Your Honor, just to clarify that particular point that I think defense counsel has made, the government has said that there was a single conspiracy that count one of the Western District of Virginia indictment with the defendant's co-defendants to distribute within the Lynchburg, Virginia area was one conspiracy. That is certainly the government's position. At no time has the government ever said, either in the court below or before this court, that the Eastern District of Virginia conspiracy and the Western District of Virginia conspiracy are the same course of conduct or the same conspiracy. You know what? I don't think you ever got to answer my first question because I didn't let you answer my first question. So could you go ahead and explain to me your strongest argument for why you say there were two separate conspiracies varying significantly in nature and scope? I think much like this court's decision in Jones, you have commonality of actors, but they take on very different roles in order to engage in a new venture. So we have a 14-year conspiracy to distribute with Mr. Jones at the top of that conspiracy, directing the distribution activities of those below him in order to get cocaine into the hands of customers throughout the Lynchburg area. And then you have the scope of the conspiracy, which was the amount of cocaine that was distributed. Over 1,000 kilograms is what the government expects the evidence at trial will prove. That was involved in that distribution conspiracy within Lynchburg. In that conspiracy, Mr. Martinez and Mr. Sanchez were the sources of supply. They were the individuals who were selling the cocaine to Mr. Jones. In the EDVA conspiracy, they changed their roles. I think they still got him the drugs. I mean, aren't you cutting it really fine? Either way, they're the two guys who got Jones his drugs, either through this informant or they handed it to them. Would it really matter if, like, in one case, you know, they walked two blocks to give it to him and in another case they drove to give it to him? One way or another, they gave him the drugs. I do think it's significant, the difference here was that the purchase happened, the transaction happened between Mr. Jones and the confidential informant who was the source of supply. But the same two guys brought him that informant. And they were paid a broker's fee, Your Honor, in exchange for that, which was not how the money transpired or the transactions of drugs occurred in all of their prior dealings. In Danville, when they would go to the stash house, they would source their cocaine from different places within North Carolina. This was a new opportunity because at the point at which this was happening, Mr. Jones was paying $32,000 per kilogram. The price had increased over the course of dealing, which had been approximately 8 to 12 months with Mr. Martinez, Mr. Sanchez acting as essentially the driver who would pick it up and bring it to the stash house. This was an opportunity for them to explore a different kind of transaction. And Martinez-Mata, in this case, was paid, according to Mr. Sanchez's testimony and grand jury, was paid $51,000 as a funder's fee for making the connection between Mr. Jones and the confidential informant and setting up the actual transaction and the buy. Well, didn't Jones use various suppliers in the 14-year conspiracy? He did. He did have different suppliers that he was using in order to bring it. Why do we care that Mr. Martinez was negotiating with a new source? Because I think that it's – To me, it's just like Jones had different sources. I think in this court's Jones case, and I apologize for the conflation of the names because I think it's difficult. In this court's prior opinion in Jones, the unpublished opinion, the court did find it very significant that although the same actors were involved, the exact same co-conspirators in the exact same location during the last month of their dealings together decided to engage in a new venture to purchase 2 kilograms of cocaine in a separate transaction. They took on different roles, and that is a factor that this court has found significant in finding two different conspiracies. What's the relationship between Jones and the co-defendants in the Western District? The co-defendants in the Western District, they're charged co-defendants. They are sub-distributors. Mr. Jones is at the top of that pyramid. He's not that different in the Eastern District. He's not at the top of the pyramid. He's not at the top of the pyramid, Your Honor. He would be at the bottom of the pyramid in the Eastern District of Virginia conspiracy. He believed he was meeting with a confidential informant who had ties to foreign nationals, essentially the cartel, in order to receive drugs from them, and this was going to be an ability for him to get cocaine at a reduced price. And he distributed it then. That was a reverse sting, Your Honor, so there were no drugs. He was intending to distribute it. So the difference was created by law enforcement. It was a reverse sting. The CI that was pretending to be a new source that you're hanging your hat on for making it a different conspiracy was a law enforcement officer. Is that correct? It was not a law enforcement officer. It was a confidential informant working with law enforcement at the time. Right, so the answer is yes, right? Working with law enforcement, yes. That's what makes it different, the intervention of the government. I don't believe that that is what makes it different because in this Court's opinions in the Jones unpublished decision, it was the same situation. There was a government informant who was serving as the new source of supply but unbeknownst to the co-conspirators in that Jones case, three of the individuals in the conspiracy decided to go in on a new venture and the Court found it significant that they were acting in different roles. Maybe you can try to distinguish this case from a published opinion of ours. Jarts. I can, Your Honor, and I think what is distinguishable is that fact of we're talking about the same periods of time, we're talking about the same course of dealing, we're talking about the same actors, the same evidence. Nobody was in a different role. No one was playing a different part. Different roles. Is that your distinction from Jarvis? Maybe you can go down the factor and tell me because it's certainly big conspiracy, little conspiracy. The time isn't different. So there's some things that are absolutely identical to Jarvis. You would agree with that, right? I do agree that there are some things that are the same in Jarvis. Tell me about what the ones that are different in your view. What I think is very significant in this case is the difference of time. We're talking the difference between a five-week conspiracy and a 14-year conspiracy. And so in terms of the breadth of the conspiracy, and that has been considered very significant in this Court's opinions when we're talking about the breadth, that does go to the scope and the nature of the activities. And it also goes to the nature of the agreement between the co-conspirators, which is at the heart of a conspiracy charge. What was the agreement? What did they anticipate and what were they planning to do? What was the agreement there? And that is what is at the heart of it. That nature and scope inquiry really sorts that out. And so between Jarvis and our case, we have that differing time frame. But we also have the very different roles taken on by the individuals in the EDVA conspiracy. And that was not present in Jarvis. In Jarvis, you had the same people acting in the same roles, engaging in the same course of conduct. Nothing about the transactions was different. Here we have a different amount. We have a different price set. We have a different venture. And we have people, the co-conspirators acting in different roles than they are in the Western District of Virginia conspiracy. And that is what the government believes is significant and distinguishes the Jones case here from the Jarvis opinion. Could this have been charged as a single conspiracy, both of them? For the EDVA conspiracy and the Western District conspiracy, no. It is the government's position. That's not spoke and prong and all those things. I have seen a lot of conspiracy charges by the government that were more different than these two. More different facts than we're talking about here. And I think that there is this very fact-driven case-by-case analysis that it gets very difficult to start to engage in hypotheticals. I think if you change some of the circumstances, we might be talking about something different. And I know that there's opinions out there that talk about the real conspiracy and the spokes and what is the comparison there. And I think that in our case, we're really looking at a Western District of Virginia conspiracy where Mr. Jones was serving as the source of cocaine supply to an established customer base within the Lynchburg area. And he had sources of supply that he counted on. Drugs are not the same between different sources of supply, even when we're talking about the same drugs. And so he has an interest in a couple of different things when he's obtaining a product. That's the quality of the product because they were also breaking it down into crack cocaine in the WDVA conspiracy and the ability to do that and then to get that product out to their customer base. Lawyers in the U.S. Attorney's Office in the Western District of Virginia know that the Eastern District of Virginia case was proceeding? They did, Your Honor. At the time of the indictment in the EDVA conspiracy, the investigators in the WDVA conspiracy were in the middle of an investigation. At that point, Mr. Jones had been present at the scenes of some controlled purchases that were made by government agents. But the extent of his involvement and his place in that conspiracy, that was an ongoing investigation when they engaged in the reversing. Virginia had not completed its investigation. And they hadn't been able to charge all 11 or 12 or 13 or however many years they would be. So they decided that their colleagues in the Eastern District of Virginia should just go ahead. Is that right?  I believe, Your Honor, that the reason that the EDVA conspiracy proceeded and charged the way that it did and the WDVA conspiracy proceeded and was charged the way that it did is because it's the government's position that those were two different conspiracies and that they were properly charged in the Eastern District of Virginia and then properly charged in the Western District of Virginia. I had the same question. I just wanted to make sure I understood your answer. So everybody knew what everyone else was doing in this case. The Western District was fine with the Eastern District. You go ahead. Like, we're doing this 14-year investigation, but you go ahead and bring your one charge. We're good with that. And the Eastern District understood, you know, we've got a 14-year investigation. We're going to be charging him for a lot of the same stuff. But that was okay with everybody. This wasn't a miscommunication. That's my question. Your Honor, I don't know that I can represent the quality of the communication that was going on at the time. Everybody knew. And I understand my time has expired. If I could just... We'd really appreciate the answer to that question. Everyone was aware that the prosecution was proceeding in both jurisdictions, Your Honor. Thank you. Thank you. Your Honor, just a few points. First, the notion that the Kerkley Hotel transaction, the Eastern District transaction, could not have been simply charged as a legal matter as part of the 14-year conspiracy in the Western District, the notion that you couldn't charge those two things together is absolute nonsense. And I think that's obvious. With respect to Jarvis and the question of whether or not Jarvis can be distinguished, I think one of the important things to note is that in Jarvis, just as is the case here over a 14-year period in Jarvis, it was, I think, a three-year conspiracy. There were, if you read the facts, the facts in Jarvis are not complicated, but it's a lengthy factual recitation. But there are, even in that the Court just mentions in passing, there are variations in the price, in the locations, and in the sources of supply for cocaine. There's garden-variety variations in every transaction probably, right? But none of that changes the fact that there is an overarching agreement between the different participants that they are going to work together to violate the drug laws. And at the end of the day, that is what this whole inquiry is about in the context of conspiracy. What is the agreement? Who are the participants in the agreement? And that's the same reason why I think in our case, it's relatively easy to reach the conclusion that we believe the Court should reach, because you have Mr. Jones operating for a long period of time with various sources of supply, always with the objective of allegedly pushing the cocaine out through distribution into Lynchburg. And then even these two gentlemen who are involved in essentially, according to the government, both conspiracies, Martinez-Mata and Sanchez-Roque, the notion that their roles vary greatly, I just think, is belied by Volume 2 of the appendix in this case, where Sanchez-Roque testifies before the Western District Grand Jury, after having already pled guilty in the Eastern District. Sanchez-Roque, in all cases, all he was was a driver, basically. He was a gopher. Martinez-Mata, I guess it was someone he met through his cousin, was the guy who was kind of the brains behind their operation. And Martinez-Mata was someone who would help Jones get cocaine from various upstream sources. It's not like Martinez-Mata was growing the cocaine himself and delivering it to Jones. He would arrange deals. Sanchez-Roque would drive and meet them. Money would be exchanged. And that's how Jones was procuring cocaine from them, allegedly at a clip of about 8 to 10 kilograms a week. So the fact that the government then drops an informant into the mix to contact Martinez-Mata, and the informant offers essentially what's closer to a two-week supply, 17 kilograms rather than 10. And they're going to meet in Lynchburg, where everything else is happening in the Western District. Same guys. And Mr. Jones shows up with clearly what are the proceeds of all of his prior Western District cocaine trafficking activities and attempts to acquire that cocaine. It's obvious that the overarching agreement that existed on that day, on August 22, 2012, when all of that happened, was the same agreement that had existed according to the government for 14 years, with Jones as a common participant figuring out ways to source cocaine and push it out through the same distribution network to the same customer base. And that's why the Eastern District indictment references other conspirators, both indicted and unindicted. And that is not a pedantic point. That's a point that this court emphasized in Raggins and Jarvis and McDougall, that, again, if you can allow the government to artificially parcel out across different indictments, they can sort of cherry-pick certain conspirators and place them in one indictment and then not name them in the other and manipulate all of it in order to focus their energy on a single defendant who they wish to charge more than once for whatever reason, by making someone run the gauntlet more than one time under the same charge. So we would submit, based on all of that, and, again, we think it's also telling that although, Judge Motz, you're absolutely correct, that the case law in this area is not always a model of clarity. It can be tough to find unifying principles. It should be, I think, certainly telling to this court that the government's primary case it appears to rely on is an unpublished disposition that appears to be, I think, prohibited from even citing under the local rules. And the district court, whose opinion we are challenging here on appeal, didn't even try to distinguish Jarvis. The only thing the district court did was do a but-see site to Jarvis at the end of a string site where it talked about other cases that we believe are readily distinguishable. And in my experience, using a but-see site is not normally the mechanism that a district court uses when addressing binding appellate precedent from within its own circuit. Before you sit down, your time has expired. Let me ask you, the government seemed to think the fact that there was a very, very big conspiracy in time and a very, very small one meant that they were different. What do you have to say about that? Two things. Number one, it's sort of a circular question-begging argument because calling one big and the other small, it depends on sort of accepting the government's characterizations and looking at each set of charging documents in a vacuum, right? When you look at the underlying factual reality and we wade through the five-prong test, suddenly they're not one big and one small. They're all just one. From a legal standpoint, again, Jarvis is on point there. In Jarvis, the first conspiracy- And you're right that the gap isn't as big, but I don't know that the court in Jarvis or any court is drawing a distinction between three years and four days, that that's close enough, but if they get further out, it's a bigger difference. And again, all of this is somewhat arbitrary, right? It's just the government has charged it. They've alleged that the 14-year activity of my client is a single continuous criminal conspiracy with multiple criminal actors. Given that allegation, there is simply no principled basis under this court's case law for excising one transaction that has all the same people involved in it other than an informant and calling it a separate conspiracy just because they want to charge my client twice rather than once. Thank you very much. I understand that you've been court-appointed, Mr. Paffert. We very much appreciate your efforts for your client. You've done a fine job. Thank you, Your Honors. We'll ask the clerk to adjourn court, and then we'll come down and greet the jury.
judges: Diana Gribbon Motz, Stephanie D. Thacker, Pamela A. Harris